UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAREN PALMER,

                                   Plaintiff,

                                                                                    <u>DECISION AND ORDER</u>

                                                                                          10-CV-6267L

                                 v.

PENFIELD CENTRAL SCHOOL DISTRICT,
DISTRICT SUPERINTENDENT JOHN CARLEVATTI,

                                   Defendants.
_____

       Plaintiff Karen Palmer brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983, alleging that she was retaliated against by defendants, the Penfield (New York) Central School District ("District") and Penfield superintendent John Carlevatti. Plaintiff alleges that in 2009, she was denied tenure and was compelled to resign from her teaching position within the District, because of her advocacy on behalf of an African-American student whom plaintiff had recommended for admittance to the District's Kindergarten Extending Education Program ("KEEP").

       Defendants have filed a motion to dismiss the complaint for failure to state a claim upon which relief can be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. #9). Plaintiff, who has amended the complaint once as of right (Dkt. #8), has cross-moved for leave to "amend/correct her [amended] complaint" pursuant to Federal Rule 15 (Dkt. #12). The proposed second amended complaint would add a claim for retaliation under Title VI, 42 U.S.C. § 2000d *et seq*.

**BACKGROUND**

The first amended complaint ("FAC") (Dkt. #8) alleges, and it is assumed to be true, that Palmer was hired by the district as a kindergarten teacher in September 2006. During the 2008-09 school year, the District implemented KEEP, which provided an extended day program to the lowest-performing students in literacy development.

In the fall of 2008, some disagreement arose between plaintiff and school officials over plaintiff's recommendation that a particular student, "JK," be admitted to KEEP. Plaintiff believed that JK would be a good candidate for the program, but he was denied admission, purportedly due to concerns over his "resistant behaviors" and his "strong knowledge of alphabetic principal [sic] (knowledge of letter names and associated sounds)." FAC ¶¶ 19, 22.

Plaintiff first recommended JK for KEEP in October 2008, FAC ¶ 18, and apparently this continued to be a source of friction between her and school officials throughout that academic year. At a meeting on April 1, 2009, plaintiff allegedly voiced her concerns over the perceived "disparate treatment of an African American student [JK] in a predominantly Caucasian school district." FAC ¶ 46. The very next day, plaintiff was informed by school principal Terri Connell that plaintiff, who was in the third year of her "probationary" period, would not be recommended for tenure. FAC ¶¶ 15, 43. Connell allegedly told plaintiff that her decision was based on Connell's belief that plaintiff was "not providing developmentally appropriate activities for [her] students." FAC ¶ 45.

In a letter to superintendent Carlevatti, plaintiff expressed her belief that the timing of Connell's announcement of her decision concerning plaintiff's tenure, coming just one day after plaintiff had spoken up about the alleged disparate treatment of an African-American student, was suspect, and that it appeared that she was being retaliated against for her remarks at the April 1 meeting. FAC ¶ 46. Carlevatti apparently upheld Connell's decision, however, and plaintiff "was compelled to resign effective June 30, 2009 ... ." FAC ¶ 47.

The amended complaint alleges that plaintiff's forced resignation was "in retaliation for objecting to the disparate treatment of an African American student in a predominantly Caucasian school district," and that the District, "by and through the deliberate indifference of its final policy maker, John Carlevatti, both *created and maintained*" a policy or practice of unconstitutional retaliation. FAC ¶¶ 47, 48 (italics in original). Plaintiff also alleges that the District failed to properly train and supervise its employees with respect to such retaliation. FAC ¶ 49.

Based on those allegations, plaintiff asserts two claims. The first, which is asserted only against the District, alleges unlawful retaliation based on plaintiff's opposition to unlawful discrimination, in violation of Title VII. The second alleges that plaintiff was retaliated against for having spoken out about an issue of public concern, in violation of the First Amendment to the United States Constitution.[1]

The proposed second amended complaint is identical to the first, but adds a third cause of action under Title VI. This proposed claim, which is also directed against the District only, is essentially identical to the Title VII claim, but adds the allegation that the District was receiving federal financial assistance at the time of the acts complained of. Dkt. #12-2 at 13, ¶ 61.

In their motion to dismiss, defendants contend that plaintiff's Title VII claim fails because she does not allege that she engaged in any activity protected by Title VII. Defendants argue that plaintiff's complaints concerning JK did not relate to an unlawful "employment practice," which is a prerequisite for a retaliation claim under Title VII.

Defendants next assert that plaintiff's First Amendment claim fails because plaintiff's complaints about JK not being admitted to KEEP did not constitute speech about a matter of "public concern," but rather were uttered pursuant to plaintiff's professional duties as a teacher. Defendants also contend that the claims against Carlevatti should be dismissed because he is entitled to qualified immunity. As to plaintiff's proposed new claim under Title VI, defendants simply argue that the

---

[1] The second cause of action refers to "defendant," but it is not clear from the complaint whether it is asserted against the District, Carlevatti, or both.

Court should not address the motion to amend until after it has decided defendants' motion to dismiss the Title VII and First Amendment claims.

## DISCUSSION

**I. Title VII Claim**

"Title VII's antiretaliation provision prohibits an employer from discriminating against an employee for opposing any practice made unlawful by Title VII." *Rivera v. Rochester Genesee Regional Transp. Auth.*, ___ F.3d ___, 2012 WL 6633938, at *9 (2d Cir. 2012) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006)). To establish a prima facie case of unlawful retaliation under Title VII, "an employee must show that (1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).

"Protected activity" includes opposition to a discriminatory employment practice or participation in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). Courts have repeatedly held, however, that a teacher's complaints about alleged discrimination directed against a student do not constitute opposition to an unlawful *employment* practice. *See*, *e.g.*, *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1183 (8th Cir. 1998) (teacher's complaints that school principal had treated black student less favorably than white student were not protected by Title VII); *Trevino v. Austin Peay State Univ.*, No. 11-cv-1139, 2012 WL 951488, at *5 (M.D.Tenn. Mar. 19, 2012) (teacher's complaints about perceived discrimination in school's financial aid practices related to school's students, not to the terms or conditions of employment of plaintiff or any other school employees, and therefore those complaints did not support a Title VII retaliation claim); *Comans v. Scott County School Dist.*, 306CV505, 2010 WL 1780205, at *6 (S.D.Miss. Apr. 30, 2010) ("Comans cannot base a Title VII

retaliation claim on that purported complaint because the underlying conduct–discrimination against a student–is not actionable under Title VII"); *Kassera v. Independent School Dist. No. 11*, No. 07-CV-2292, 2008 WL 4613747, at *4 (D.Minn. Oct. 15, 2008) ("Even if Kassera could establish that she opposed discrimination against minority students, she would be unable to recover under Title VII because such discrimination by a school is not 'an unlawful employment practice'"); *Holt v. Lewis*, 955 F.Supp. 1385, 1387-88 (N.D.Ala. 1995) (complaint about university's discrimination against a student did not involve an employment practice and thus any retaliation plaintiff suffered for advocating that student's rights was not prohibited by Title VII), *aff'd*, 109 F.3d 771 (11th Cir. 1997).

In the case at bar, plaintiff alleges only that she complained about what she perceived to be disparate treatment of an African-American student. She does not allege that she complained about unlawful discrimination directed against her, or any other District employee. This claim therefore fails.

**II. First Amendment Claim**

In order to establish a First Amendment retaliation claim, plaintiff must prove that: (1) she engaged in constitutionally protected speech because she spoke as a citizen on a matter of public concern; (2) she suffered an adverse employment action; and (3) her speech was a "motivating factor" in the adverse employment decision. *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008) (per curiam).

The Supreme Court has sought "to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Educ. of Township High School Dist. 205*, 391 U.S. 563, 568 (1968). In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), however, the Court "narrowed [its] jurisprudence in the

area of employee speech by further restricting the speech activity that is protected." *Weintraub v. Board of Educ. of City School Dist. of City of New York*, 593 F.3d 196, 201 (2d Cir.) (quoting *Reilly v. City of Atl. City*, 532 F.3d 216, 228 (3d Cir. 2008), *cert. denied*, 555 U.S. 1170 (2009)) (additional internal quotation marks omitted), *cert. denied*, 131 S.Ct. 444 (2010). Specifically, *Garcetti* "h[e]ld that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." 547 U.S. at 421.

To state a facially valid First Amendment claim, then, a public employee must allege facts which, if true, would show both that she spoke on a matter of public concern, and that she was speaking as a "citizen," rather than "pursuant to [her] official duties ... ." *Ross v. Breslin*, 693 F.3d, 300, 305 (2d Cir. 2012) (quoting *Garcetti*, 547 U.S. 421). *See also Weintraub*, 593 F.3d at 201 (holding that, by filing a grievance with his union to complain about his supervisor's failure to discipline a child in his classroom, teacher was speaking pursuant to his official duties and thus not as a citizen, and stating that "[a]ccordingly, Weintraub's speech was not protected by the First Amendment, and there is no cause for us to address whether it related to a 'matter of public concern'"); *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) ("If the court determines that the plaintiff either did not speak as a citizen *or* did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech'") (quoting *Garcetti*, 547 U.S. at 418) (emphasis added); *Nichik v. New York City Transit Auth.*, No. 10-CV-5260, 2013 WL 142372, at *7 (E.D.N.Y. Jan. 11, 2013) ("If either of these requirements is not met, then a First Amendment retaliation fails as a matter of law").

"To determine whether speech was made 'pursuant to' one's official job duties, it is necessary to ascertain whether the speech at issue 'owed its existence to [the plaintiff's] job duties and was made in furtherance of those duties.'" *Looney v. Black*, ___ F.3d ___, 2012 WL 6633949, at *15 (2d Cir. 2012) (quoting *Ross*, 693 F.3d at 308). Applying that principle, the Second Circuit has "held that a teacher's complaints to a school board about the inadequate discipline of a disorderly

student were 'part-and-parcel' of his duties because they dealt with his ability 'to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning.'" *Looney*, 2012 WL 6633949, at *15 (quoting *Weintraub*, 593 F.3d at 203) (citation and internal quotation marks omitted in original).

In this case, plaintiff's speech occurred during a "mandatory grade level meeting" attended by "the entire District Kindergarten teachers," along with "school Administrators Gene Mancuso and Dr. Mark Miele." FAC ¶ 39. During that meeting, plaintiff "voiced concern that she had referred an African American student who was denied enrollment, and that this appeared to be disparate treatment." FAC ¶ 42.

Even drawing all reasonable inferences in plaintiff's favor, that speech clearly was uttered because of plaintiff's job as a teacher, and in furtherance of her duties as a teacher. She was speaking about a student whom she had recommended for KEEP, pursuant to her job duties, at a meeting attended only by school and school district employees and officials.

The nonpublic nature of the speech does not necessarily mean that plaintiff did not speak "as a citizen," rather than as an employee. *See Garcetti*, 547 U.S. at 420 ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive"). Nevertheless, expression of one's opinions to "[a] limited audience weigh[s] against [a] claim of protected speech." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 714 (9th Cir. 2009). *See also Hayes v. City of Newnan*, No. 05-CV-102, 2007 WL 2765555, at *37 (N.D.Ga. Sept. 20, 2007) ("Although the private setting of the speech is not dispositive, it is one factor along with others that courts use in determining whether speech involved a matter of public concern") (citations omitted).

More to the point, however, plaintiff's speech related to a matter that was directly connected to, and arose out of, her duties as a teacher. She was not complaining about systemic discrimination, but about the treatment of one particular student, whom she had suggested as a candidate for KEEP, and for whom she apparently had continued to advocate throughout the 2008-09 school year.

But even assuming, *arguendo*, that plaintiff's speech about JK did relate to a matter of public concern, *Garcetti* made it clear that courts should not conflate the public-concern requirement with the private-citizen requirement. A plaintiff must establish–and therefore must plead–both. If the factual allegations show that the plaintiff was speaking pursuant to the duties of her job as a public employee, rather than as a private citizen, the court need not even consider whether the subject of her speech was a matter of public concern. *See Weintraub*, 593 F.3d at 201.

I conclude, then, that even accepting the truth of all of plaintiff's factual allegations, she spoke not as a private citizen, but pursuant to her duties as a public schoolteacher. Her First Amendment claim must therefore be dismissed, and there is no need for the Court to determine whether she spoke about a matter of public concern.

**III. Proposed Title VI Claim**

In her proposed amended complaint, plaintiff asserts a claim under Title VI, which provides, *inter alia*, that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000(d).

Title VI does not contain an explicit anti-retaliation provision, but courts have generally construed the statute as creating an implied private right of action for retaliation. *See*, *e.g.*, *Peters v. Jenney*, 327 F.3d 307, 318 (4th Cir. 2003); *Hickey v. Myers*, No. 09-CV-1307, 2010 WL 786459, at *4 (N.D.N.Y. Mar. 2, 2010); *Kimmel v. Gallaudet Univ.*, 639 F.Supp.2d 34, 43 (D.D.C. 2009); *Corrales v. Moreno Valley Unified School Dist.*, No. EDCV-08-00040, 2008 WL 4382507, at *4 (C.D.Cal. Aug. 29, 2008).

To state a claim for Title VI retaliation, a plaintiff must show: (1) participation in a protected activity, that was known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protected activity and the defendants' adverse action. *Peters*, 327 F.3d at 320; *Hickey*, 2010 WL 786459, at *4. "As in other civil rights contexts,

to show 'protected activity,' the plaintiff in a Title VI retaliation case need 'only ... prove that he opposed an unlawful employment practice which he reasonably believed had occurred or was occurring.'" *Peters*, 327 F.3d at 320 (quoting *Bigge v. Albertsons, Inc.*, 894 F.2d 1497, 1503 (11th Cir. 1990)).  A substantive violation of Title VI occurs when "(1) ... there is racial or [other prohibited] discrimination and (2) the entity engaging in discrimination is receiving federal financial assistance." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 631 (10th Cir. 1993).

The proposed amended complaint alleges that plaintiff "continuously complained of disparate treatment of African American children in the Penfield School District," and that after she complained, she was denied tenure and compelled to resign, in retaliation for her complaints. Dkt. #12-2 at 13 ¶ 63.  Plaintiff also alleges that the District was receiving federal assistance at the time of the alleged retaliation.  *Id.* ¶ 61.

Although plaintiff's factual allegations regarding the relevant events do not support her assertion that she "continuously complained of disparate treatment of African American children"–they show, rather, that on one occasion, she voiced a concern about the disparate treatment of one particular student–the fact remains that she does allege that she complained about perceived race discrimination by the District.  Plaintiff further alleges that this protected activity was swiftly followed by an adverse action: her denial of tenure.  And she alleges that at the time, the District was a recipient of federal funds.

The fact that plaintiff was not the target of the underlying discrimination does not defeat her claim.  The question is simply whether she opposed a practice that she reasonably believed violated Title VI.  *Peters*, 327 F.3d at 319.  *See, e.g., Hickey*, 2010 WL 786459, at *4 (plaintiff who alleged that he was removed from his post as dean at state university because of his complaints about racially discriminatory admission policy sufficiently pleaded a cause of action for retaliation under Title VI); *Kimmel*, 639 F.Supp.2d at 43 ("Kimmel's alleged advocacy on behalf of minority students is a protected activity sufficient to support a retaliation claim" under Title VI); *Corrales*, 2008 WL 4382507, at *4 (stating, with respect to plaintiff's assertion "that she was retaliated against ... for

advocating for the educational rights of her students under Title VI," that "[t]his is the very conduct governed by Title VI's anti-retaliation provisions").

"In general, leave to amend is to be freely granted." *Amie v. Shinseki*, 806 F.Supp.2d 641, 643 (W.D.N.Y. 2011) (citing Fed. R. Civ. P. 15(a)). Typically such a motion will not be denied unless amendment would be futile, or where the proposed amendment is made in bad faith. *Johnson v. University of Rochester Med. Center*, 686 F.Supp.2d 259, 270 (W.D.N.Y. 2010), *appeal dismissed*, 642 F.3d 121 (2d Cir. 2011). No such showing has been made here. In fact, defendants' opposition to plaintiff's motion to amend does not even address the motion on its merits; defense counsel simply states that the Court "should first address the pending legal challenges to Plaintiff's Title VII and First Amendment claims." Decl. of Jeremy A. Colby (Dkt. #15) ¶ 6.

I conclude, then, that plaintiff should be permitted to amend her complaint to assert a claim under Title VI. Plaintiff's motion for leave to amend is therefore granted, as set forth in the Conclusion to this Decision and Order.[2]

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. #9) is granted. Plaintiff's motion for leave to file a second amended complaint (Dkt. #12) is granted in part. The first amended complaint (Dkt. #8) is dismissed, without prejudice to plaintiff's filing of a second amended complaint, asserting only a claim under Title VI, against the Penfield Central School District only. Plaintiff

---

[2]Since the proposed Title VI claim is asserted only against the District, plaintiff's claims against Carlevatti are dismissed in their entirety. Though this renders it unnecessary for the Court to address Carlevatti's argument that he is entitled to qualified immunity, I note that the only specific factual allegations concerning Carlevatti are that plaintiff wrote him a letter in which she "expressed her concerns" that she was being denied tenure for retaliatory reasons, FAC ¶ 46, and that "it was the action of John Carlevatti himself, who upon notice of Plaintiff's complaints of ordered [sic] or condoned the Plaintiff's termination in retaliation for [her complaints]." FAC ¶ 49. It is doubtful whether those allegations, and plaintiff's conclusory allegation that Carlevatti displayed deliberate indifference to the retaliation against her, *see* FAC ¶¶ 48, 49, would suffice to state a claim against Carlevatti in any event.

shall file her second amended complaint within twenty (20) days after the entry of this Decision and Order.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      January 22, 2013.